UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GENE BURKS,

        Plaintiff,                                          Case No. 2:09-cv-149

v.                                                 HON. ROBERT HOLMES BELL

ROBERT MASTERS, et al.,

        Defendants.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Gene Richard Arnold Burks-Bey, an inmate currently confined at the Baraga Maximum Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include Resident Unit Officers Robert Masters, Glenn Fielding, Kelly Johnson, and Sergeant Matthew Rondeau, all of whom are employed at the Alger Maximum Correctional Facility.

Plaintiff's complaint alleges that on June 2, 2008, while confined at the Alger Maximum Correctional Facility, Resident Unit Officers (RUO) Robert Masters and Glenn Fielding used excessive force against him. On June 2, 2008, Defendants Masters, Fielding, and Johnson escorted Plaintiff back to his cell. When reaching his cell, Plaintiff asked, "Where is my coat?" Defendant Fielding claims he told Plaintiff that they would discuss it after he entered his cell. Defendant Fielding states that Plaintiff continued to argue and would not move, so Defendant Fielding placed his right hand in the middle of Plaintiff's back, and guided him into his cell. Defendants Masters, Fielding, and Johnson all claim that while they were attempting to close the cell

door, Plaintiff quickly turned around and stuck his foot out in order to prevent the door from closing. Defendant Masters repeatedly tried to shut the door, without realizing Plaintiff's foot was the reason the door would not shut. Plaintiff claims that he yelled to Defendants that they were closing the door on his right leg. Plaintiff states that as Defendant Masters was shutting the door on his right foot and leg, Defendant Fielding began to push and kick Plaintiff in the leg. Defendant Masters claims that he initially thought Plaintiff had used a "door plug" to prevent the door from closing. Defendant Masters states once he realized that Plaintiff's foot was in the way, he immediately quit trying to close the cell door.

Plaintiff alleges that as Defendant Masters was trying to shut the door on his foot and leg, Defendant Johnson told Defendants Fielding and Masters to break Plaintiff's leg. Defendants Johnson, Fielding, and Masters all deny this allegation. Plaintiff claims that he fell to the floor once his foot was removed from the doorway. Defendants also deny this allegation. Defendant Fielding then wrote a major misconduct ticket for Disobeying a Direct Order and Assault and Battery (Staff Victim), asserting that Plaintiff had refused to comply with orders and had offered physical resistance to staff's efforts to secure him in his cell. Plaintiff was found guilty of both charges after a hearing on June 5, 2008.

In the early afternoon of June 2, 2008, Defendant Rondeau went to Plaintiff's cell to review his misconduct ticket with him. Plaintiff asked Defendant Rondeau if he could see a nurse. Defendant Rondeau claims he called health care, and health care requested that Plaintiff be brought to the triage room. Defendant Rondeau asserts that he ordered Plaintiff's arms and legs to be restrained for staff safety, since Plaintiff had just assaulted staff. Defendant Rondeau had staff bring extra-large leg restraints since Plaintiff was complaining that his leg hurt. Plaintiff refused to put his feet out of the lower door slot in order for staff to put on his leg restraints. Defendant Rondeau

states he considered this a refusal of offered medical treatment. Approximately two hours later, at 3:14 p.m., Plaintiff allowed restraints to be applied and was taken to health care.

Nurse Charles Scott saw Plaintiff at 5:58 p.m. and noted that Plaintiff was refusing to bear weight on his right leg. However, when Scott assessed Plaintiff's calves by squeezing on the sides of his legs, Plaintiff had a delayed pain response which did not correspond to the pressure being applied. Nurse Scott stated that Plaintiff's leg appeared to be normal. Nurse Scott also noted that while dispensing medications, Plaintiff was observed bearing weight on his right leg, and when he saw Scott he bent his leg and lifted it off the floor.

That night, Plaintiff was reportedly screaming and demanded to see a nurse. Nurse Galloway went to see Plaintiff at 12:55 a.m., but Plaintiff was asleep. At 1:41 a.m. she returned to his cell. Plaintiff hopped to the door, but did not wince or make any facial grimaces of pain. Nurse Galloway assessed Plaintiff and determined that there was no urgent problem. Plaintiff saw Dr. Frontera at 2:53 p.m. on June 3, 2008. Dr. Frontera noted that there was no swelling or marks on Plaintiff's right leg, but ordered an x-ray of his right ankle and foot. On June 17, 2008, Dr. Frontera read the x-ray reports and found there was no change in Plaintiff's right ankle and foot from a previous x-ray done in 2001.

Plaintiff claims that Defendants' actions violated his rights under the Eighth Amendment to the United States Constitution. Plaintiff is suing Defendants in their official and individual capacities and is seeking $5,000 in compensatory damages from each Defendant and $25,000 in punitive damages from each Defendant, totaling $120,000.

Presently before the Court is Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because

both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The

Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Plaintiff claims that Defendants' conduct amounted to excessive force. Every malevolent touch by a prison guard does not give rise to an Eighth Amendment cause of action, *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992), and the prisoner must allege that he sustained more than de minimis injury in order to state a viable excessive force claim. *See id.* at 9-10; *Thaddeus-X v. Blatter*, 175 F.3d 378, 402 (6th Cir. 1999) (en banc). The brief period of physical discomfort suffered by Plaintiff while his foot was caught in the door is not sufficient to state an Eighth Amendment claim. *See Benson v. Carlton*, No. 99-6433, 2000 WL 1175609, at *1 (6th Cir. Aug. 9,

2000) (whirling sensation in prisoner's head after fear of guard caused him to skip supper constituted a de minimis injury and did not support claim for mental or emotional suffering under the Eighth Amendment); *Scott v. Churchill*, No. 97-2061, 2000 WL 519148, at *2 (6th Cir. April 6, 2000) (plaintiff's claim that guard grabbed his neck and threatened him did not rise to the level of an Eighth Amendment violation). Plaintiff was examined by Nurse Scott on the day of the alleged excessive force. Nurse Scott observed that Plaintiff's leg appeared to be normal and stated that Plaintiff's delayed pain response did not correspond to the pressure applied during the examination. Nurse Scott later observed Plaintiff bearing weight on the allegedly injured foot. Plaintiff was seen by the doctor on the following day, during which it was noted that Plaintiff's leg appeared normal and was not swollen. The doctor ordered an x-ray of the leg, which showed no injuries from the alleged incident. Dr. Frontera also noted that there was no swelling or marks on plaintiff's leg. The record in this case fails to show that Plaintiff suffered any physical injury from the incident. Therefore, Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claim.

Defendants Masters, Fielding, Johnson and Rondeau claim that they are entitled to qualified immunity because Plaintiff has failed to show a violation of clearly established law. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise

power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As noted above, Defendants Masters, Fielding, Johnson and Rondeau did not violate Plaintiff's constitutional rights. Accordingly, they are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' Motion for Summary Judgment. Accordingly, it is recommended that Defendants' Motion for Summary Judgment (Docket #19) be granted and this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' Motion for Summary Judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: July 7, 2010